BITHER *v*. JACKS.

MOTOR VEHICLES—PEDESTRIAN CROSSING STREET—QUESTION FOR JURY. In action by pedestrian for injuries sustained when struck by motorist where evidence presented questions of fact for jury, *held*, verdict was not contrary to the great weight thereof.

Appeal from Muskegon; Vanderwerp (John), J. Submitted October 13, 1933. (Docket No. 86, Calendar No. 37,413.) Decided December 19, 1933. Rehearing denied January 30, 1934.

Case by John J. Bither against Ralph Jacks for personal injuries received while crossing street at intersection when struck by defendant's automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Joseph F. Sanford,* for plaintiff.

*Alexis J. Rogoski,* for defendant.

Weadock, J.   The plaintiff and appellee was a merchant 75 years of age, with a store at the corner of Clay avenue and Terrace street, Muskegon. Clay avenue, running east and west, is paved, 46 feet wide, and Jefferson avenue, running north and south, is paved, 42 feet wide.   The crossing for pedestrians upon which plaintiff was injured was marked by white lines.   Plaintiff was injured about seven o'clock on a bright morning, September 6, 1932, by being run down on the crossing by defendant in his motor car.   Plaintiff was on his way to his store, proceeding down the north side of Clay avenue coming from the west.   He passed the city hall, crossed Jefferson street to the northeast corner where the Marks store was located and then turned to cross Clay avenue toward the bus terminal station and before starting to cross Clay avenue he looked down the avenue to the east and could see to Terrace street, a distance of one long block and there were no moving cars in sight and he saw a car parked in front of Hilt's store and other cars beyond Hilt's store, apparently parked.

Then he looked the other way and there was nothing coming, but there was a bus standing on the Jefferson side of the terminal building facing north.

He then started to cross the street and when he had gone half way or two-thirds across the street the bus started up and he did not know whether it was going to turn on Clay avenue or not, and he slackened his pace and continued on toward the terminal building, and the next thing he remembered he was in Mercy Hospital.

He testified that no horn was blown and no warning given of the approach of a car and that his hearing was good.

The point is made in behalf of the defendant and appellant that there is no testimony as to how the plaintiff was injured. That, however, was supplied by the defendant himself. He was cross-examined under the statute. He said he was going west on Clay avenue and going slow because he knew he was approaching a bad corner. He was probably eight or nine feet from the curb, was alone in his car and saw a pedestrian when he got in front of Hilt's store, Mr. Bither, the plaintiff, who was the only person he saw on the street.

He testified further: When he first saw Mr. Bither he was 150 feet away from him. "I kept coming and when I came up to the crosswalk I heard something hit the car on the side and that was Mr. Bither, and I just pulled my car a little to the left and the rear fender hit him." He said he did not blow his horn and did not apply his brakes because he did not think he was going to hit plaintiff and he was looking straight ahead. He further said the plaintiff "walked into the front of my car;" the front side of the car and he stopped on the crosswalk on Clay avenue.

The plaintiff was so badly hurt that he was rendered unconscious and the next thing he knew was when he was in Mercy Hospital.

The plaintiff had lived in Muskegon many years and was familiar with the location and looked up and down the street before he attempted to cross and there were no motor cars moving in either direction.

Dr. LeFevre and Dr. Teifer treated him at the hospital and he had a trained nurse. He could not

roll over in bed. His left side was in the worst condition. He was confined in Mercy Hospital from the 6th day of September until the 23d day of October and in that time he could not walk around and was helpless. He could not use his left arm or leg. His food had to be cut and prepared for him and he had to eat with his right arm. He had no use of the left side at all, and did not have at the time of the trial. Before the injury his health was good and he was at work every day at his store, delivered goods, unpacked them, put them away, and now he cannot do so. His eyesight was injured so that he could not read newspapers or anything else after the injury. His hospital bill was $333. Dr. Teifer's bill was $83. Dr. LeFevre's was $75, and he had two nurses, and after he left the hospital his expense at his brother's was $30 a week. He is not able to dress himself and has not done any work since the injury.

At the close of the trial defendant moved for a directed verdict which was refused. The case was submitted to the jury with a very fair and full charge upon every question involved in the case and the jury returned a verdict for plaintiff of $4,546.

Defendant moved for a judgment *non obstante veredicto,* which was denied. Judgment was rendered on the verdict and the defendant appealed.

This court has held in many cases that the driver of an automobile and a pedestrian have equal rights at street crossings, which must mean that the person first arriving at the crossing has the right to cross in safety.

It is a matter of common knowledge that the pedestrian has an absolute right on the highway, while the motorist must have a license for his car and himself before he can go on the highway, yet the pedestrian's rights are generally disre-

garded, and to save life and limb he must wait until any number of cars have passed to and fro, for a chance to cross the street in safety.

In this case the plaintiff was run down while he was crossing the street. Defendant's rights were fully protected in the charge; the question of fact was properly submitted to the jury and the judgment is affirmed, with costs.

POTTER and SHARPE, JJ., concurred with WEADOCK, J.

WIEST, J. (*concurring in result*). I think Mr. Justice WEADOCK has reached the right result. The evidence presented issues of fact for the jury and I cannot hold the verdict contrary to the great weight thereof.

Points urged for reversal are based mainly upon acceptance of defendant's testimony and the exclusion of disclosed circumstances, and plaintiff's testimony of his movements and care up to the time he was struck and rendered unconscious. There was evidence, supported by circumstances, tending to show that plaintiff was struck by a fast moving automobile traveling on the wrong side of the street.

I do not concur in the statement that "the person first arriving at the crossing has a right to cross in safety." I know of no such assurance given by the law, regardless of facts.

Neither do I concur in the statement that "the pedestrian's rights are generally disregarded, and to save life and limb he must wait until any number of cars have passed to and fro, for a chance to cross in safety." Such an instruction at a trial would call for reversal.

McDONALD, C. J., and NORTH, FEAD, and BUTZEL, JJ., concurred with WIEST, J.